Good morning. My name is Billy Gibbons. I represent Cornell Pendleton. I know we've raised a lot of issues in this appeal, but what I'd like to focus on today is the juror issue of the comment made by the juror number nine and the money laundering dollar amount calculations, which I think the record is somewhat unclear on. And you do not waive any issues that are in your bill? No, sir. No, sir. And I'm happy to answer any other questions. But with respect to the juror, the alternate juror reported to the Court that during the trial, on the day that the government rested and before the defense presented its case, that juror number nine said Mr. Pendleton wasn't acting like a man who was about to go to the Federal pen. He brought that to the Court's attention, and the district court then decided to interview all of the jurors. And juror number nine denied making that statement and said all that he said was I said I thought he seemed relaxed for someone who was on Federal trial. But the alternate juror adamantly stated that he heard him say Federal pen. He said he definitely said pen as in penitentiary. He specifically said Federal pen. And he also said that it seemed as if in his mind the defendant wasn't innocent. And after — Wait. I'm sorry. The alternate juror said it seemed to him that it appeared to the juror that Pendleton wasn't innocent. Yes, sir. Yes, sir. So he's, in effect, mind reading. Well, yes. He was. He was. But I think what's important here is what was actually said. And I do think it's worthwhile looking — So it was disputed, what he said? Yes, sir. Yes, sir. It was — In other words, I grant you that the comment is troubling if, in fact, it is true that the comment was made. But as I understand it, two jurors dispute that narrative. Correct. Why is that not the district court's, certainly, responsibility in the first instance, if not in the final instance? It is. But I think what's unusual about this case is that ultimately the district court said she believed everybody. And I think that it's worth looking at. The entire discussion of this is in the record at 2351 to 2374. And this is where the court goes through, you know, her findings. And initially, the district judge's first reaction was — and this is specifically what she said — if I were making a credibility call, I think the alternate was being honest. And then she went on to say — Everybody, for being honest. No, it's — An honest mishearing. It's true. That is true, Judge. But I think what we have here is where the district court left us is in, at best, a state of equilibrium between, you know, what was said. And because she didn't — she didn't — she didn't make a credibility call between these two — you know, the alternate juror and juror number nine. And I think that's what you have in a lot of these cases where the courts do get great discretion about making those credibility calls, like in Collins, which is one of the cases that the government cites. In that case, the district court said it didn't believe that the — that the juror made a negative comment during voir dire. And here we have — where we are is — even today, we really can't say, and we don't know, who — we don't have a judgment call about what — what was said. And the case is — what this court says is that when there's a doubt, the doubt should be resolved in favor of excusing the juror. And so that's why we think that the district court erred here. Because if we were in a situation where the court did make a judgment call, a credibility call, and said, I believe juror number nine over the alternate, then, yes, I think we're in the area where we've — you know, we give the district court discretion on that. But here, the court left us in a — really on equal footing on both. And — Is that really true, though? I mean, it's not as if the judge said, I believe only one. The judge is saying, I believe all of them. Yes. Which means she believes the innocent explanation. She just doesn't think the other person's lying. She thinks the other person is mishearing, but sincerely mishearing. Right. But I think that, Judge, that is — I mean, to me, it's hard to — it's hard for me to understand how the alternate could have misheard Federal Pen. And he was very adamant that he said, I heard him say Federal Pen. And it was enough for — and he had enough concern to bring this to the district judge and to say, which I know it's mine reading, and I'm not trying to say that that's correct. But he was concerned enough to say that I think that this juror is not in the right state of mind. And one other point on the facts here. I know this is also minor, too, and I'm not trying to split hairs. But the district court, when she — when the district court decided not to excuse any jurors, she said — and this is at 2358 in the record — that juror No. 9 said, I would want somebody in my frame of mind to be on the jury if I were the defendant. And I can understand how that would give the Court some comfort that I think this person — and especially from the defendant's perspective, you know, shouldn't be excused. That's not exactly what the Court's — I mean, the — what that juror said was, I feel like I'm in the frame of mind that you'd like me to be in. So — and I know that's splitting hairs, but I do think that to the — to the extent that the Court was influenced by that or felt like, you know, this juror No. 9 went out of his way to say, I am — I am being fair to this defendant, that's not exactly what he said. And so I just think that on the facts here, left in a state of equilibrium, the Court should have erred on the side of excusing the juror. And I think that's what this Court's — this Court's cases have said, that when in doubt, excuse the juror. When in doubt, when in doubt to whom? Well, when in doubt — well, when in doubt whether the — the juror has made a prejudicial comment to the defendant. But to whom? To the district judge or to the appellate court? Well, that's a good question. And I think — I think that here — normally you would say — I think you — you give it to the district court because you — because this Court has said the district court gets broad discretion, especially in this area of making credibility calls. But what we — but the reason that this case is — is different, I think, is that although she made a — she made a credibility call that she believed both. And so I think that that on its own is doubt. You know, she — she didn't say she believed one over the other. So I think we — you know, by definition, we have to have doubt here. But I do agree, Judge, that it is — it is — I think we give the discretion to the district court ordinarily about determining whether there's doubt about, you know, what was said. And then — and then one final point on this, because the Court does go on to say, well, even if the — even if the — even if Juror No. 9 said this, I don't find it to be, you know, as bad as some other statements that were made in other cases where we have excused jurors. But I don't really think we should be getting there in this case because, you know, before you get to — I mean, we have a different — a different issue here, which is, you know, honest — juror honesty. And — and I think that we shouldn't get to the innocuousness of the comment and evaluating the comment until there's a determination of, you know, whether it was even said and whether, you know, Juror No. 9 was being truthful when he said he didn't say it. I mean, if she had said, look, I don't know what happened here, so tie goes to status quo, then I could see maybe you might have a point I'd still want to debate it. But that's not what she said here, right? I just want to be clear. She said, I believe Juror No. 9. It's just that I also believe — Correct. Correct. It was a malicious complaint. It was a good-faith complaint. But at the end of the day, I believe Juror No. 9. Yes. Yes, she did. And really, you know, I guess my main point here on this is that there has to be doubt if she's — even if she believes both of them. And I think that part of this was, you know, the court accepting that both of these people were in good faith, but there's still a doubt about whether he said that. And so — and I do think that, you know, under the circumstances that the court should have excused that juror because of the doubt and because it was someone in the State of Equilibrium. In your post-verdict Rule 29 motion, for the, I guess, nine accounts of conviction you're challenging here for sufficiency of the evidence, in your post-verdict Rule 29 motion, you raised only three of those sufficiency challenges. In other words, you didn't raise the other six. You raised them in your Rule 29 — at the close of government's evidence, Rule 29, at the close of Europe, at the close of trial, et cetera. Why wouldn't those six that you didn't re-raise in the post-verdict Rule 29 motion be waived? Well, Judge, I think we tried to be selective with the district court on the three that we thought we had our best arguments on. We didn't intend to waive them, and I thought we could still raise those on appeal. I'm asking you, why wouldn't they be waived? In other words, why are they preserved? I'm asking. It's an important question. Judge, I would say because we did raise them in our initial Rule 29 after the verdict. But in the analog to civil procedure of Rule 50B, they would be waived if this were a civil case. I'm looking forward to the government's response to that. They don't raise it in their brief, but I think it's an important question. Well, Judge, I think that if we had not filed a Rule 29 at all, I don't think we would have waived for purposes of appeal. And we didn't have to on sufficiency. That's right. Yes. So that's the question. By being selective, did you even inadvertently waive your other six? And I would just say, Judge, we didn't intend to do that, and I don't believe we did because I don't believe we were required in the first place to raise those. You weren't required to raise any of them. Right. It's just an issue that we need to look at. Judge, the last issue that I would like to address is on the money laundering amount. Because what happened, it's somewhat unclear what the district court, what amount the district court found. The PSR initially stated that the laundered amount was $673,533. And that's at a table at 8963 in the record. And essentially that is the entire — that's the government's submission of the amount. We had disputed several of those items. And in particular, there was a $21,000 number that was supposedly proceeds of Mr. Pendleton investing in drug dealing by Michael Serena. And that was the basis of count one, which he was acquitted on. And there were two other $127,000 that was for a rental property. And there was some testimony at trial that that fund, that was actually funded by rental proceeds from another property. And what we said, when we raised those with the district court, the court said that even if we take out the Haynes property, which is $121,000, and the drug proceeds, which was $21,000, that we would be above the — some other sales of vehicles to three other individuals. But the problem is that none of those three other individuals, the vehicles for — this is Larry Hardy, Lonnie Sanders, and Roland Butler — were not in the PSR. So it's unclear what the — what final amount the district court found and relied upon to get to — it would have been a $550,000 threshold, which was — got us to our final sentencing. And so we would ask that — I mean, the government has already raised an issue of having to remand this to correct the 121 versus 120-month issue, that it should be at least remanded for the court to determine what that — what that number was. Because we went from 673. She did exclude about almost $200,000 of that. And if you exclude that, then we're below the $550,000 threshold, which is a two — would be a two-level difference in the sentencing. And what the court said to get us back up above that amount was she cited three other potential transactions, but those are not included in the PSR. And so we don't even have a finding about what those dollar amounts are. And so we would ask that it be remanded at least for a recalculation of the — of the dollar amount. All right. Thank you, Mr. Gibbons. You've saved time for rebuttal. Yes, sir. Wait a minute. Thank you, Judge Smith. And may it please the Court. Your Honors, I'll respond to the both — both issues that Mr. Gibbons raised. But first, Judge Barksdale, quickly on your waiver question, I'll just admit right now I don't know the specific answer to you. I can tell you we didn't raise waiver in this issue — in this case. And it's because in looking at some — I really believe in more recent cases that the court had, for lack of a better word, maybe softened the requirement of a further — of a post-verdict Rule 29 raising everything. And that if it was raised at the trial, that was sufficient. I can't — I don't have a case in mind that that is my memory of it. However, it — obviously, we didn't raise waiver in this issue, Judge Barksdale. But with the court's permission, I'd be glad to look at that and file a 28J to answer that as quickly as possible as I could for the court. As it relates to the — We have them do that. Yeah, that would be fine. Each side can do that within seven days. It would be fine. Sure. Thank you, Your Honors. In reference to the jury issue that Mr. Gibbons raised, there's no reason for that to upset the court or concern the court at this matter. It should not undercut the trial or undercut the verdict or undercut the jury service in this matter. And I think it's important to realize that, first, this comes in a new trial motion, so we're on an abuse of discretion standard to begin with. That's the process this came up with. And primarily, first, Judge Ho, as you brought out, this was debated. This was a question of fact that was put to the district court. And as all matters of district fact are put, there's a fact finder. And this court is routinely given that discretion to the court. Judge Barksdale, you had asked a question of the case of the laws when, in doubt, the jurors should be removed. You said to whom. And while I can't find a case on point that would say exactly to whom, everything in the literature would say that is a directive to the trial court because the trial court is the one who has to decide it. The courts have routinely said the trial court has their discretion as broadest when dealing with claims of internal misconduct, such as premature deliberations. And even if this was a premature expression of guilt, and I'm not saying it was. I think it was an offhand comment, which is what the judge found. But even if it was a true premature expression of guilt, this court still generally refers to the district court's decision of whether the defendant ultimately got a fair trial. And that was the language from Collins. And the reason for that is because the trial judge is in a better position to judge the mood of the juror, the mood at trial, and the predilections of the juror, than this court would be on what it calls a cold, insistent record. The statement that I am in a frame of mind, the judge is in the — the district court judge is in the best position to determine what that meant and what that was — what the juror meant by that, and could the juror still be fair. And ultimately, that is the second — that is the ultimate question. Could the jury be fair? The district court here determined yes. It did credit all three. It heard all three statements. It believed it, but found that juror 9 and 10 sort of corroborated either more and determined that juror 13, who really wasn't part of the conversation, believed what juror 13 heard, but may have misheard it, may have misspoken. But ultimately, that was the district court's decision. And district court did a great job in here, taking the entire jury panel in there and interviewing them one-on-one about whether they had heard off comments. And these are all part of a sealed record at 2568 to 94 and 2595 to 2623. The district court took that chance, took that time, and interviewed everybody. And I think that's a good job to say that she did not abuse her discretion. And ultimately finding that all three jurors, including the alternate, could be fair. And at the Rule 33 new trial motion, finding that there was a fair trial and there was no prejudice here. And the discerning verdict supports that. The same juror that opposing counsel says has the premature feeling of guilt had a vote to acquit on certain counts. So that juror also rendered a discerning verdict with the rest of the jury. The other case is that the district court relied on to say that the comments were not as bad, which was Grooms v. Rainwright, the Hoffman-Pertillo case, and the Collins case. An interesting thing is not only in two of those cases, not only in those cases did the district court point out that the juror comment in that was worse than this, but in one of them, the jury, the district court only questioned the mother of the defendant who had heard the juror's comment. And the other, the district court declined to investigate altogether. This case, you have more than that. The district court actually investigated, did its own investigation, its own interrogation of the jury, and made the credibility call that's before this Court now. That Court was in the best position to do it, and there's no reason to upset it. As to the sentencing calculation that Mr. Gibbons speaks of, the PSR came up with an additional 14 levels of an amount of $673,690. All of this was based on testimony that came from Michael Serena at trial. The claim has been that the PSR, the probation district court, accepted the government's version of it pretty much in a chart that was given. This was a chart that was given in the government's response to defendant's objection to the PSR. Importantly, in that chart, there was a record site to every section of Michael Serena's testimony where these amounts came from. And you can take a look at the PSR, and I can give you the records as well. Most of these involved the Mercedes-Benz, the Porsche, the Chevrolet, the properties at Haines Boulevard, the property at St. Ferdinand, remodeling those properties, and a house at Santa Cruz. These were the main properties that Cornell Pendleton purchased and helped conceal through the drug money. Those alone come out to over $550,000, if I've done the math right, which is the cutoff for the 2B1.1. And these are at pages 1464 to 74, 1480 to 82, 1487 to 90, 1506 to 1520, 1519 to 1520, 1533 to 38, and 1539 to 42 of the record. So those are all instances in Michael Serena's testimony where the judge could rely to come — where the PSR could rely to come up with the numbers to get to the $550,000. On top of that, you had the additional testimony about property at Cavalier, a vehicle engine purchased, presidential Rolex, Rolex, other jewelry, and drug sale profits that Mr. Serena testified he gave back to Cornell Pendleton, because Mr. Serena testified at some point Mr. Pendleton actually invested in the drug game by giving money to Mr. Serena, and Mr. Serena invested the $20,000 that he got from Pendleton three times and returned a profit to him. Those are also from the testimony of 1557 to 62 and 1674 to 76 of the record. So there's testimony underlying the numbers that justified the calculation amount in the guidelines. Your Honor, and as I said, those are the issues I had in response to Mr. Gibbons' points. Unless the Court has any other questions, I won't bring anything up. And other than that, we would rest on our brief and ask the Court to affirm the conviction and sentence, with the exception of remanding the sentence of correction so that the written judgment can conform to the oral sentence. Your view is that's not something we can or should correct? I actually believe you could correct it, Your Honor. I think sometimes that is the procedure. And if the Court can correct it to do that, I think that's the easiest thing as well. And if there's no other reason to remand the sentence, that would be the most expedient. All right. Thank you. Thank you, Your Honor. Did you save time for rebuttal? On the sentencing issue. On the last thing that was issued. Yes. I didn't mean to interrupt your train of thought. So is there a problem with this Court making the — I don't see a problem with it, but making the correction to 121? I don't think so, Judge. And, frankly, I mean, we didn't even notice that until the government had raised it. You know, we — I think the oral sentence — You've answered, and I don't want to take any more of your time. Okay. Thank you. Really, just — I'd like the Court to take a look at one record site with respect to the loss amount. And that's at 25 — pages 2556 and 2557. And that's where the district court discusses this $673,000 amount. That's the sole amount that the — that's the amount that the government just explained, and that's the sole amount that they advocated for, and that was in the PSR. And the district court said two things, and it had to do with the $21,000 alleged drug proceeds and then the Haynes property and the remodel of Haynes. And the district court said, first, even deducting the $21,000 that was included for Mistel Pendleton's alleged involvement in drug trafficking, you were still above the $650,000, which actually should be $550,000. That's the cutoff. And then she also said, I think even when we take out the Haynes property or the remodel of Haynes, then we still have to include the vehicles purchased by three other individuals that were not in the PSR and that were still — were still above the $550,000 amount. The problem there is that if you — once you do take out those three things that the court, it seems to me, was agreeing to take out, that brings you from $673,000 to $515,000, which would get us to — drop us two levels under the guidelines. And what the court has cited as getting us back up above the guidelines are three purchases that are not in the PSR. And so we don't know, you know, what the court was using for those amounts or really why, you know. We also objected to — that there was even a preponderance of evidence to support that. And without that being addressed in the PSR, we don't know what the court was using to support those amounts. So I do think that there is an issue on — it's a two-level sentencing issue on accepting the removal of these three specific amounts to get us below the guideline range. So I would ask the court either to reduce it by two levels, accepting what the district court had taken out, or at a minimum remand it for the court to give a final calculation, an alternate calculation based on these other properties that it wanted to substitute in place. Circling back to this question, whether it's 121 or 120 months, the government proposes it's 120 months. They raise that, of course, in their brief. You did not respond to it in your reply brief. Is it 121 or 120? I think it's 121, Judge. I mean, the court said 121 and then went on to say 120 as to counts two through six and 120 as to other counts to run concurrently. I think that was where the mistake was. And then the written was also 121. So your position is the written judgment is correct and jives with the oral pronouncement at sentencing? Yes, I do, Judge. I mean, I know she said both at sentencing, and like I said, we didn't even realize that. I mean, I hate to concede, even though it's a one month, but I do think that that's correct. If there are no further questions, I'd cede the rest of my time. Thank you, Mr. Gibbons. Your case is under submission. Thank you. Next case, express oral.